UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALBERT E. HOLLAND, JR.,<br>    *Petitioner*,<br>    *v*.<br>UNITED STATES OF AMERICA,<br>    *Respondent*. | Civil No. 3:11cv1868 (JBA)<br><br><br>June 30, 2014 |

**RULING ON MOTION TO VACATE OR SET ASIDE CONVICTION AND
SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Petitioner Albert E. Holland, Jr. petitions [Doc. # 1] for a writ of habeas corpus under 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel.[1]  For the reasons that follow, Mr. Holland's petition will be denied.

**I.      Factual Background**

On April 15, 2010, after a three-day trial, a jury found Petitioner Albert Holland guilty of one count of willful tax evasion in violation of 26 U.S.C. § 7201 and two counts of filing false tax returns in violation of 26 U.S.C. § 7206(1).  On September 1, 2010, the Court sentenced Mr. Holland to thirty-six months' incarceration.  (*See United States v. Holland*, 09cr139 (JBA), Judgment [Doc. # 115].)  Mr. Holland was released from incarceration in July 2013.

At trial, the jury found that the Government's evidence showed that Mr. Holland willfully evaded the payment of taxes, penalties, and interest for tax years 1994 through

---

[1] Mr. Holland has filed numerous supplemental pleadings.  While many of these filings are duplicative of his Petition, to the extent that they expand upon or clarify claims raised in Mr. Holland's original Petition, the Court has considered his claims inclusive of these pleadings.

1996, 1998, and 2000 (as alleged in Count One of the Indictment) and willfully filed false tax returns for 2002 and 2003 (Counts Two and Three) stating that he had no income when, in fact, he earned more than $150,000 collectively in those two years.  The trial evidence showed that although Mr. Holland made numerous sworn submissions to the IRS contending that he could not afford to pay his tax liability from prior years, he failed to disclose that a partnership that he had formed called Real Estate Asset Recovery Service (REARS) won a judgment in September 1999 of approximately $4.65 million for compensation owed to it from its former partner Active Media Services (AMS).  In order to shelter this income, Mr. Holland transferred his shares in REARS to his four children and backdated the documents associated with the transfer to make it appear as though the transfer had occurred in 1998, before REARS won the judgment.  Mr. Holland had his children form a limited liability corporation, Jawbone, LLC, to receive this money which was then used for Mr. Holland's real estate and personal expenses.

## II.    Discussion

To obtain collateral relief under 28 U.S.C. § 2255, a petitioner must show that his sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Habeas corpus relief is an extraordinary remedy and should only be granted where it is necessary to redress errors that, were they left intact, would "inherently result in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962).  "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Sanders v. United States*, 1

F. App'x 57, 58 (2d Cir. 2001) (quoting *United States v. Bokun,* 73 F.3d 8, 12 (2d Cir. 1995)).

The availability of relief under § 2255 does "not purport to modify the basic distinction between direct review and collateral review.  It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States  v. Addonizio*, 442 U.S. 178, 184 (1979).  "The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice," namely that "[i]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures" and the "increased volume of judicial work associated with the processing of collateral attacks inevitably impairs and delays the orderly administration of justice."  *Id.* at 185 & n.11.  A claim that "is neither jurisdictional nor constitutional in nature and does not constitute a 'fundamental defect which inherently resulted in a complete miscarriage of justice'" is not cognizable under § 2255.  *Fiumara v. United States*, 727 F.2d 209, 213 (2d Cir. 1984) (quoting *Hill,* 368 U.S. at 428).

### A.      Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is assessed under the two-pronged standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984).  The first prong considers whether counsel's performance was objectively unreasonable "under prevailing professional norms."  *Id.* at 688.  To satisfy this element, an error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  Second, the petitioner must affirmatively prove prejudice by showing that counsel's errors were so serious that they "deprive[d] the defendant of a fair

3

trial" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Stated differently, an error by counsel does not warrant setting aside a conviction unless it had an "effect on the judgment." *Id.* at 692.

"Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. An attorney's performance should not be viewed through the lens of hindsight, but rather assessed by "consider[ing] the circumstances counsel faced at the time" of the proceedings and from "counsel's point of view." *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005). Counsel's "strategic choices . . . are virtually unchallengeable." *Strickland*, 466 U.S. at 690. A habeas petitioner will not prevail on an ineffective assistance claim by second–guessing or disagreeing with counsel's strategy. *Id.* at 689. However, a constitutionally inadequate performance may be established by a "show[ing] that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," keeping in mind that "counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Applying these principles results in an ineffective assistance of counsel test that "is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on it." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007).

1.      *Statute of Limitations Defense*

Mr. Holland advances a number of claims of ineffective assistance of counsel. Only one appears to present a potentially viable basis for relief: that trial counsel failed to recognize that "there were Statute of Limitations issues regarding certain charges." (Pet'r's Mem. Supp. [Doc. # 1] at 3–4.) Although Mr. Holland does not elaborate on the basis for this claim, and the Government's response is singularly unenlightening, the Court's review of the record has identified a potential claim for analysis.

A "section 7201 prosecution involving the failure to file income taxes is timely if commenced within six years of the day of the last act of evasion, whether it is the failure to file a return or some other act in furtherance of the crime."[2] *United States v. DiPetto*, 936 F.2d 96, 98 (2d Cir. 1991). The Indictment against Mr. Holland was returned on June 17, 2009, and thus prosecution of § 7201 violations occurring before June 17, 2003 would be time barred. (*See United States v. Holland*, 09cr139 (JBA), Indictment [Doc. # 1] ¶ 15.) Prosecution would be timely if Mr. Holland's "last affirmative act of tax evasion" occurred after June 17, 2003. *DiPetto*, 936 F.2d at 98.

The Indictment alleged and the jury was charged that seven different "affirmative acts" of evasion formed the basis for Count One, two of which occurred outside the limitations period: filing false Offers in Compromise ("OICs") with the IRS on November 25, 1998 and January 2, 2001. (*See United States v. Holland*, 09cr139 (JBA), Jury

---

[2] "The elements of tax evasion under 26 U.S.C. § 7201 are (1) willfulness, (2) the existence of a tax deficiency, and (3) an affirmative act constituting an evasion." *United States v. Koskerides*, 877 F.2d 1129, 1137 (2d Cir. 1989).

Instructions [Doc. # 61] at 14; Indictment [Doc. # 1] ¶¶ 11, 14.)[3]   The other five affirmative acts charged in Count One occurred within the limitations period between August 5, 2003 and November 9, 2004.  (Indictment ¶¶ 15–17; Jury Instructions at 14–15.)

The jury was further charged that "[t]he Government does not have to prove all of these affirmative acts" and "only has to prove one affirmative act beyond a reasonable doubt."  (Jury Instructions at 15.)  While the jury was told that it "must unanimously agree on which affirmative act the Defendant committed" (*id.*), no special interrogatories were used and thus it cannot be determined which of these affirmative acts the jury found proven (*see United States v. Holland*, 09cr139 (JBA), Jury Verdict [Doc. # 66]).[4]   Although two of the affirmative acts identified in the Indictment occurred more than six years before the Indictment was returned, the Government does not explain why there was no potential statute of limitations issue, stating only that "it is likely that the movant is

---

[3] In the OICs, Mr. Holland acknowledged his liability to the IRS for past due taxes, but falsely contended that he was financially unable to pay such liabilities.  (Indictment ¶¶ 5(b), 6, 11, 14, 19.)

[4] At the charge conference, the Government objected to using special interrogatories, contending that "the Second Circuit has said they have a general distaste for special interrogatories."  (*United States v. Holland*, 09cr139 (JBA), Charge Conf. Tr. [Doc. # 131] at 17.)  Defense counsel acknowledged the Second Circuit's "disfavor [for] special verdicts" but suggested that interrogatories might be appropriate, because "the jury does have to be unanimous as to the affirmative act committed by Mr. Holland, I don't know if those cases are different."  (*Id.* at 18.)  Defense counsel did not pursue the issue further, however, and stated that "if the Court rejects [using interrogatories], I have no problem with [a simple jury verdict] form."  (*Id.* at 19.)  The issue of statute of limitations was not raised.

confusing the civil limitations period with the criminal limitations period."[5]  (Gov.'t's Opp'n [Doc. # 9] at 10.)  It is at least theoretically conceivable that the jury could have returned a guilty verdict on Count One based on its finding that the Government had only proved beyond a reasonable doubt one or both affirmative acts of evasion that occurred outside the limitations period.

The Second Circuit has held that the failure of defense counsel to raise a statute of limitations defense where it is a complete defense to a count falls "below an objective standard of reasonableness," and  defense "counsel's failure to object to the time-barred counts is unaccountable in the circumstances, and cannot 'be considered sound trial strategy.'"  *United States v. Hansel*, 70 F.3d 6, 8 (2d Cir. 1995) (quoting *Strickland*, 466 U.S. at 668, 689) (internal citations omitted)).

---

[5] Mr. Holland's civil liability to the IRS for tax years 1979 through 1985 expired before the Indictment was returned (*see* Trial Tr. Vol. II [Doc. # 129] at 297; *see also* Gov.'t's Trial Motion in Limine [Doc. # 27] at 4), because 26 U.S.C. § 6502(a)(1) provides that "[w]here the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun . . . within 10 years after the assessment of the tax."  Thus "if after 10 years from the date of assessment, which itself must take place within three years after the tax return was filed, the IRS has not moved to collect the tax by levying on the taxpayer's property or wages or sued to collect the tax, it usually has to give up."  *Lantz v. C.I.R.*, 607 F.3d 479, 482 (7th Cir. 2010).

The Government contends that "[c]ertainly, trial counsel was aware of the statute of limitations as his cross-examination of (then) RA Dragen demonstrated."  (Gov.'t's Opp'n at 10.)  The Government does not cite to any portion of this testimony nor explain the purported relevance of any testimony elicited during cross examination.  A review of defense counsel's brief cross-examination of Dragen does not demonstrate that defense counsel explored any statute of limitations defenses.  (*See* Trial Tr. Vol. II [Doc. # 129] at 311–14.)  In any event, where there would be no strategic reason to not advance a statute of limitations defense, it is unclear what relevance counsel's "awareness" of this defense would have to an ineffective assistance of counsel claim if that defense were not advanced.

Even if Mr. Holland has satisfied the first element of an ineffective assistance of counsel claim, the second prong requires him to demonstrate prejudice.  "In assessing prejudice under *Strickland,* the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently.  Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different.  This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'  The likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 131 S. Ct. 770, 791–92 (2011) (quoting *Strickland*, 466 U.S. at 693, 696).  Prejudice results if Defendant has been convicted of "time-barred counts that would have been dismissed, if his attorney had acted competently."  *Hansel*, 70 F.3d at 8.

Here, however, Count One was not completely barred by the statute of limitations, which under § 7201 barred prosecution for failure to file income taxes where the last affirmative act of evasion occurred before June 17, 2003.  For statute of limitations purposes, the dates relevant to Count One are the affirmative acts of evasion rather than the filing dates for the tax years for which payment was evaded.  *See DiPetto*, 936 F.2d at 98.  Count One alleged seven affirmative acts of evasion, each of which covered multiple overlapping tax years, and collectively charged evasion for calendar years 1994 through 1996, 1998 and 2000.

The affirmative acts that occurred outside the limitations period were the filing of OICs on November 25, 1998 and January 2, 2001 relating to tax years 1979–1985, 1987,

1991, 1994–1996, and 1998.[6]  (Indictment ¶¶ 11, 14.)  Three of the five affirmative acts of evasion that occurred within the limitations period also alleged that Mr. Holland made false statements related to his ability to pay liabilities for the 1994–1996 and 1998 tax years, and the other two (which both occurred on October 28, 2004) related to the income evaded in connection with the false return filed for tax years 2002 and 2003 respectively, which were also the subject of the charges in Counts Two and Three under § 7206(1), Filing a False Return.  (*Id.* ¶¶ 15–17; Jury Instructions at 15.)

As the last five affirmative acts occurred within the limitations period, there would only be a potential statute of limitations issue if the jury determined that the

---

[6] Tax years 1979–1985, 1987, and 1991 were not charged in the Indictment as years for which payment was evaded, but the Indictment charges that Mr. Holland submitted a single OIC on both November 25, 1998 and January 2, 2001 that related to his tax liability for multiple tax years both within and outside the limitations period.  (*See* Indictment ¶¶ 11, 14, 19.)  In a "Motion for Complete Innocence" filed in his criminal case (*see United States v. Holland*, 09cr139 (JBA) [Doc. # 151]), Mr. Holland attaches excerpts from an internal IRS memorandum from the IRS Criminal Tax Counsel to the Special Agent in Charge of the Boston Field Office, dated September 27, 2006 (the "Tax Counsel Memorandum"), in which the Tax Counsel wrote that it "concur[red] with the proposed prosecution of Albert Holland" under § 7201 for tax years 1994 through 1996 but did not "concur with the recommended evasion of payment charges relating to Holland's tax years 1979 through 1985," because the first affirmative act of evasion related to those years did not occur until November 25, 1998 when the OIC was submitted.  (*Id.* at 2.)  Because under § 6502(a)(1) taxes cannot be collected in a civil action more than ten years after assessment, *see supra* Note 5, the Tax Counsel concluded that there could not be criminal liability under § 7201 for evasion of payment where the first affirmative act of evasion occurred at a time when the IRS would be unable to collect such taxes civilly.  The Tax Counsel noted that "[e]ven though Holland's 1979 through 1985 liabilities are no longer collectible, evidence of those liabilities should be presented to the jury as evidence of willfulness, as a well as relevant conduct for sentencing purposes."  (Tax Counsel Memorandum at 2.)  The brief excerpt of the Tax Counsel Memorandum submitted to the Court does not discuss the six-year criminal statute of limitations under § 7201.

Government only proved that Mr. Holland evaded payment of taxes due with his November 25, 1998 and/or January 2, 2001 affirmative acts but not with any of the last five acts alleged.  However, the affirmative acts charged for November 25, 1998 and January 2, 2001 were submitting OICs in which Mr. Holland falsely claimed that he could not afford to pay his tax liability.  The August 5, 2003 and November 9, 2004 affirmative acts, both of which occurred within the limitations period, also alleged that Mr. Holland falsely claimed in an IRS form that he could not afford to pay his tax liability in connection with an OIC.[7]  (*See* Indictment ¶¶ 15, 17).

At trial, the Government contended that all four of these affirmative acts of evasion stemmed from Mr. Holland's failure to disclose to the IRS the existence of the REARS-AMS lawsuit when claiming that he could not afford to pay his tax liability for multiple years.  While REARS did not prevail in the lawsuit until September 1999, which is after the first affirmative act charged, the Government contended that by the time of this first affirmative act, in November 1998, AMS did not dispute that it owed REARS compensation and merely disputed the amount, meaning that Mr. Holland was aware that the lawsuit was a substantially valuable asset and that he could afford to pay the IRS even if he did not know the exact amount.[8]  (*See, e.g.,* Trial Tr. Vol. IV [Doc. # 132] at

---

[7] The October 28, 2004 affirmative acts related to a different set of facts: the 2002 and 2003 tax returns (Indictment ¶¶ 16–17) but, if the jury relied on only one or both of these two affirmative acts to convict Mr. Holland, there is no statute of limitations issue because these affirmative acts occurred within the limitations period.

[8] Given that Mr. Holland had not yet received any payment at the time of the first affirmative act of evasion alleged, the Government's evidence was weakest as to this affirmative act, and defense counsel argued in his summation that "there is no indication in the record, nor should you speculate that Mr. Holland in the summer of '98 had any

715–16 (arguing in summation that Mr. Holland's affirmation in the November 25, 1998 OIC that he couldn't afford to pay $1.4 million owed was "simply not true," because "what he doesn't tell them is that since 1997 he's been part of a lawsuit that could bring in millions of dollars.").)   The January 2, 2001, August 5, 2003 and November 9, 2004 affirmative acts occurred after REARS was awarded judgment and after Mr. Holland, through Jawbone, purchased a new home, and were also based on Mr. Holland's false affirmation that he could not afford to pay his tax liability and his affirmation in financial disclosure forms that he had not transferred anything of value in the past ten years despite the transfer of his REARS shares to his children.  (Indictment ¶¶ 13–17.)

Thus, the November 25, 1998 and January 2, 2001 affirmative acts outside the limitations period and the August 5, 2003 and November 9, 2004 affirmative acts within the limitations period all related to Mr. Holland's statements offered in connection with OICs in which he falsely asserted that he could not afford to pay his tax liability despite the pending and actual REARS judgment.  As a result, there is no "substantial" likelihood that the outcome would have been different had defense counsel challenged the first two affirmative acts.  *See Harrington*, 131 S. Ct. at 792.  That is, it is entirely unlikely that the jury could have concluded that the Government proved only that Mr. Holland committed affirmative acts of evasion on November 25, 1998 and/or January 2, 2001 but not also on August 5, 2003 and November 9, 2004, because the same evidence supported the January 2, 2001 affirmative act as the August 5, 2003 and November 9, 2004: that at the time Mr.

---

idea this lawsuit was worth anything."  (Trial Tr. Vol. IV at 743.)  Thus, it is highly unlikely that the jury concluded that the Government proved only that Mr. Holland lied in the November 1998 OIC, before the REARS judgment was received, but not in the three affirmative acts charged after the judgment was obtained.

Holland claimed to the IRS that he could not afford to pay his accrued tax liability, he had already received the REARS judgment.  As discussed above, given that the Government's evidence was weakest as to the November 25, 1998 affirmative act, it is also unlikely that the jury could have concluded that the Government only proved this affirmative act. Because Mr. Holland has not demonstrated that he was prejudiced by any errors that his counsel may have made in failing to raise a statute of limitations defense in light of the strong evidence presented in support of the affirmative acts within the limitations period, he has not shown entitlement to relief on this claim.[9]

2.    *Other Ineffective Assistance of Counsel Claims*

Mr. Holland also contends that counsel "did not have the required technical competency to represent him" as he "had NO significant criminal (or other[]wise) TAX experience."  As examples, Mr. Holland asserts that his counsel "failed to advance evidence . . . . that would have demonstrated that the Movant relied upon the advice of his professional and highly compensated tax advisors."  (Pet'r's Mem. Supp. at 3–4.)  The trial record is to the contrary.  At the close of the Government's evidence, Petitioner's counsel moved for judgment of acquittal on the basis that "[t]he evidence in totality showed that Mr. Holland's state of mind is such that he did not willfully intend to evade

---

[9] The statute of limitations for filing a false tax return (Counts Two and Three), 26 U.S.C. § 7206(1), is also six years.  *See* 26 U.S.C. § 6531(5); *United States v. LaSpina*, 299 F.3d 165, 178 (2d Cir. 2002) ("The statute of limitations for tax offenses under Title 26 is six years.").  As the Indictment alleged and the jury was charged, the false tax returns for 2002 and 2003 were filed on October 28, 2004.  (*See* Jury Instructions [Doc. # 61] at 18–19; Indictment ¶¶ 21, 23.)  The offense of filing a false return is "committed at the time the return is filed," *United States v. Habig*, 390 U.S. 222, 223 (1968), and thus these counts were not timed barred and counsel would have had no basis to raise a statute of limitations defense as to Counts Two and Three.

taxes" and that his "actions . . . were the result of returns the accountant filed and signed off on." (Trial Tr. Vol. IV at 710.)

Mr. Holland also contends that his trial counsel "failed to properly investigate the case; failed to interview potential Defense Witnesses; and failed [to] develop a Defense Strategy prior to trial" and "failed to request and obtain necessary documents that would have assisted [Mr. Holland] in establishing that he did not willfully evade the payment of United States Income Tax and did not intentionally file two false tax returns." (Pet'r's Mem. Supp. at 2.) As the Second Circuit has made clear, a petitioner cannot establish an ineffective assistance of counsel claim under *Strickland* based on allegations that counsel failed to conduct an adequate investigation that is "entirely conclusory" and "[a]bsent an identification of the issues that should have been investigated and a showing that such investigation would have led to" a different result. *United States v. Herrera*, 186 F. App'x 109, 112 (2d Cir. 2006).

Mr. Holland did not initially identify any particular subjects or documents that counsel failed to investigate or pursue and never identifies the potential defense witnesses that were not interviewed, but his subsequent filings focus his claim, at least partially, on his counsel's failure to review and utilize tax files that Petitioner's tax counsel, Alan Merkin, provided to him, which Petitioner contends "could have exonerated" him or "at least [] caused doubt in the jury's mind." (Pet'r's July 31, 2013 Supplemental Br. [Doc. # 15] at 1.) Identified among the documents in these files is an October 2004 letter containing IRS Revenue Officer "Sara Davidson's"[10] authorization from her supervisor to

---

[10] The referenced letter has not been included with Mr. Holland's filings. No witness named Sara Davidson testified at trial (*see United States v. Holland*, 09cr139

question Mr. Holland without Attorney Merkin's presence, which Mr. Holland contends contradicts her trial testimony that she had this permission before her August 2004 interview with him.  (*Id.*)  Additionally, Petitioner identifies an email from Attorney Merkin to Mr. Holland asserting that IRS Agent Scorza made an unannounced visit to Mr. Holland's home "in violation of the attorney circumvention rule."[11]  (*Id.* at 2.)  Mr. Holland also contends that a 2001 letter from the IRS shows that he owed approximately $440,000 in taxes, but the Government later claimed $1.2 million due at that time, allegedly demonstrating that the IRS made a "fraudulent" offer of settlement in 2001 "in that no offer could be made if there existed taxes owed after the years encompassed by the" offer in compromise and Mr. Holland's amended returns for 1994 through 1996 will show that the IRS owes him "a substantial amount of money."  (*Id.* at 1.)

Even if Mr. Holland's attorney did fail to review such documents and such documents reveal that Officer Lauriat's and IRS Agent Scorza's testimony was not truthful, Mr. Holland has not shown how such documents would have been relevant to his defense.  The evidence at trial consisted principally of documentary evidence and testimony showing that Mr. Holland backdated the documents transferring his shares of REARS to his children and his use of the assets of Jawbone, LLC to pay his personal expenses.  Petitioner has not shown how this testimony bore upon anything other than matters peripheral to his criminal liability.  Thus, even if these documents show what

---

(JBA), Witness List [Doc. # 67]), and the Government's opposition refers to the revenue officer as Sarah Lauriat.  (Gov.'t's Opp'n at 16.)  Accordingly, the Court will assume that Mr. Holland intends to refer to Revenue Officer Sarah Lauriat, not Sara Davidson.

[11] Mr. Holland also claims that Lauriat and Scorza committed perjury before the grand jury, which is addressed *infra* pp. 17–20.

Petitioner claims they do, he has not demonstrated that he was constitutionally prejudiced by counsel's failure to utilize them.

Petitioner also faults counsel for not introducing a 433A tax form from 1997, which showed the value of his REARS shares to be negative $150,000. (*Id.*)  Significantly, this document was from the year preceding the conclusion of the lawsuit in which REARS recovered more than $4 million and thus it was not relevant to the charged conduct.

Mr. Holland also faults his attorney for not introducing Attorney Merkin's opinion on the legality of his tax filings.  This opinion had been proffered in connection with Mr. Holland's OIC; it did not reference his transfers of REARS' assets to Jawbone. Because the Government's cross examination of Attorney Merkin could have highlighted the fact that Mr. Holland never informed Attorney Merkin, his tax attorney, that he had backdated the documents transferring his REARS interest, thus undermining the defense strategy that Mr. Holland did not act willfully, Petitioner's counsel cannot be deemed unprofessional for failing to offer Attorney Merkin's testimony.  Declining to adduce this testimonial or documentary evidence was well within the area of trial strategy to which counsel are afforded latitude and Petitioner has demonstrated neither deficient performance nor prejudice by this claim.

Next, Mr. Holland contends that his attorney "failed to review [with him] the discovery information he did receive from the government," "failed to keep [him] advised of important issues during the course of this case," and "failed to follow up on information provided [by Mr. Holland] that would have impeached the credibility of the government's witnesses."  (Pet'r's Mem. Supp. at 2–3.)  As Mr. Holland provides no details regarding counsel's purported failures here, his "self-serving, conclusory

allegations" are insufficient to establish an ineffective assistance claim.[12]  *Rosenberger v. United States*, 133 F. App'x 799, 801 (2d Cir. 2005).

Mr. Holland further contends that his attorney was ineffective because he did not file any pretrial motions.  (Pet'r's Mem. Supp. at 3.)  Relatedly, he contends that counsel "failed to address the Brady Violation in the Movant's case," but he does not specify any basis for this assertion.  (*Id.* at 4.)  No specific pretrial motions are identified that he believes counsel should have filed and there was no seizure of evidence from Mr. Holland or inculpatory statements to law enforcement that could have formed the basis for a motion to suppress.  In fact, in the Court's view, attorneys who reflexively file boiler-plate motions in every criminal case maybe failing to "use 'professional discretion in deciding whether there are sufficient grounds' for such a motion."  *United States v. Aulet*, 618 F.2d 182, 187–88 (2d Cir. 1980) (quoting *LiPuma v. Comm'r, Dep't of Corr., State of N. Y.*, 560 F.2d 84, 93 (2d Cir. 1977)).  "An examination of [the Second Circuit's] decisions concerning failure to make various pretrial motions or trial objections demonstrates that we require a clear showing of inadequacy in counsel's performance to justify overturning a conviction" and have "emphasized that claims of ineffective assistance must be premised on actual, not possible, prejudice to the client."  *Id.* at 188.

Mr. Holland further contends that his trial counsel failed to inform the Government that he "would not have had any income taxes due and owing for tax years

---

[12] Moreover, as the Government notes, there is some indication that Mr. Holland was informed by his attorney of discovery received from the Government.  The day after the Government provided defense counsel with a summary of an interview with John Camp, Mr. Holland called Mr. Camp and left him an uncordial voicemail referring to the interview summary.  (Gov.'t's Opp'n at 9.)

2002 and 2003." (Pet'r's Mem. Supp. at 4.)  The Government's opposition represents that counsel did advise it of Mr. Holland's contention (*see* Gov.'t's Opp'n at 12), and in any event, defense counsel argued at trial that Mr. Holland believed that payments he received in 2002 and 2003 were a loan rather than income (Trial Tr. Vol. IV at 747) despite the Government's contrary evidence (*see id.* at 720).

Mr. Holland also contends that his counsel "failed to make known to the government and the Court that certain profit and Loss Statement[s] (here in K-1) information provided to the Movant by third parties was evaluated and subsequently determined to be erroneous." (Pet'r's Mem. Supp. at 4.)  Petitioner does not explain the relevance of this information, but presumably the reference to the "K-1 profit and Loss Statement" refers to REARS' partnership tax return.  Since Mr. Holland was charged with evading the payment of taxes on his personal income, the relevance of these partnership returns is not apparent.  Given that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Strickland*, 466 U.S. at 690, Petitioner has not shown that counsel's failure to advance these arguments was unreasonable, *see id.* ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.").

### B.      Other Claims

Petitioner asserts a variety of other claims that are not cognizable on a § 2255 petition, because they do not allege constitutional error, lack of jurisdiction or error of law constituting a fundamental defect. *See Napoli*, 32 F.3d at 35.  Mr. Holland asserts that he was "prejudiced as a result of bias and perjured testimony by government witnesses." (Pet'r's Mem. Supp. at 3.)  Bias of Government witnesses is an issue of witness credibility for the jury, as the jury was charged, and is not generally cognizable on habeas review. Even in a post-trial motion for acquittal, a court is not permitted "to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.'"  *United States v. Cote*, 544 F.3d 88, 98 (2d Cir. 2008) (internal quotation marks omitted) (alterations in original).

Similarly, Mr. Holland's claims regarding the purportedly false grand jury testimony of Lauriat and Scorza, not cast as ineffective assistance of counsel, constitute direct challenges to the grand jury process, which are not cognizable on a § 2255 petition. *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989).  To the extent that Mr. Holland challenges the false trial testimony of Lauriat, "a showing of perjury at trial does not in itself establish a violation of due process warranting habeas relief." *Ortega v. Duncan*, 333 F.3d 102, 108 (2d Cir. 2003).  "Instead, when false testimony is provided by a government witness without the prosecution's knowledge, due process is violated only 'if the testimony was material and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.'"  *Id.* (quoting *United States v. Wallach,* 935 F.2d 445, 456 (2d Cir. 1991)) (footnote and alterations omitted).  Where the Government "knew or should have known of the perjury, the

18

conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Wallach*, 935 F.2d at 456 (internal quotation marks omitted); *see also Ortega*, 333 F.3d at 108 n.4 ("Although *Wallach* involved a direct appeal from a federal district court conviction, rather than a collateral attack on a state conviction through habeas, we find its reasoning applicable here."); *Conteh v. United States*, 226 F. Supp. 2d 514, 519 (S.D.N.Y. 2002) (applying *Wallach* to a § 2255 petition).

As discussed in regard to that portion of Mr. Holland's ineffective assistance of counsel claim relating to Lauriat's testimony about her August 2004 meeting with Mr. Holland (*see* Pet'r's Mem. Supp. at 9), there is no showing that this testimony was material to the jury verdict. Additionally, Petitioner has not shown that the Government was aware of any potential perjury and a new trial would be warranted only if the testimony were material and if there was "any reasonable likelihood" that absent the false testimony Petitioner would not have been convicted. *See Wallach*, 935 F.2d at 456. Absent a showing of the materiality or relevance of these statements to Petitioner's guilt or innocence, Petitioner fails to show entitlement to relief.

Petitioner describes a number of documents and other evidence not introduced at trial, but is not clear if they are being claimed as relating to an ineffective assistance of counsel claim or are instead attempts to relitigate his criminal liability on collateral review. (*See* Pet'r's Mem. Supp. at 4–5; Pet'r's Reply [Doc. # 11] at 2.) For example, Petitioner makes a number of arguments related to his taxes from 1979 through 1986. (*See* Pet'r's Mem. Supp. at 4–5.) Given that Petitioner was convicted for evading payment in 1994 through 1996, 1998 and 2000, prior tax years have no apparent relevance. Thus,

even if their omission is framed as ineffective assistance of counsel, there is no indication that counsel acted other than properly in failing to offer irrelevant evidence, or that Petitioner could have been prejudiced by the absence of this evidence.  Otherwise these claims are not cognizable on collateral review.  *See United States v. Frady*, 456 U.S. 152, 164 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal.").

In Petitioner's October 7, 2013 Supplemental Brief [Doc. # 27], he contends that his amended tax returns for 1995 and 1996 "show the movant owes no tax or a greatly reduced amount."  (*Id.* at 9.)  Mr. Holland submits the original and amended returns (which were submitted to the IRS in September 2013, well after his trial), (*see* Supplemental Reply [Doc. # 29]), and contends that the Government had materials forming the basis for these amended returns "since 2007, maybe [] 2005," showing that Mr. Holland "owes no tax or a greatly reduced amount" but did not turn them over to the defense.  (Supplemental Br. at 9.)  Pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963), the "prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment."  *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001).  "[E]vidence is material in the *Brady* context only if 'its suppression undermines confidence in the outcome of the trial.'"  *Id.* (quoting *United States v. Bagley,* 473 U.S. 667, 678 (1985)).  Given that Petitioner does not specify what materials were allegedly withheld by the Government and their relevance, and he does not offer any non-conclusory facts showing that the Government was in possession of them before verdict, he has not established a *Brady* claim.

C.      **Other Motions**

On August 20, 2013, Petitioner filed a Motion [Doc. # 16] seeking an order that the Government release to him "all records concerning Michael Berne, Atty. Hoffman, the accountant for A-M Real Estate and all tax returns filed for that company," which he contends are required "to complete his 1040x filings for the two years [these] charges were brought."[13]  On September 19, 2013, the Court issued an Order [Doc. # 18] to Show Cause, requiring the Government to respond by September 27, 2013.   Although the Government has still not responded, which could be grounds to grant the motion, as Mr. Holland's request for "all" records is overbroad and the relevance of these records to the merits of this Petition is far from apparent, the motion will be denied.

On November 5, 2013, Petitioner filed a Motion [Doc. # 33] for Summary Judgment on the ground that the Government failed to produce the documents that he requested in his discovery motions.  Because summary judgment is not authorized by the Rules Governing Section 2255 Proceedings for the United States District Courts, Petitioner's motion is denied.  *See Ramos v. United States*, No. 09cv7938 (SAS), 2010 WL 2670823, at *1 (S.D.N.Y. July 2, 2010) ("This Court is unaware of any case where summary judgment was used to grant a section 2255 motion in the petitioner's favor.").  Petitioner has also moved [Doc. # 36] "for the Court to disregard the Government's . . . rebuttal of the Plaintiff's previous motion for summary judgment," which is denied as moot in light of the Court's denial of Mr. Holland's motion for summary judgment.

---

[13] Petitioner has filed two other motions [Doc. ## 29, 37], seeking these same documents.

21

Upon his release from custody, Petitioner sought [Doc. # 24] to convert his § 2255 motion into a writ of coram nobis, which has been specifically abolished by Fed. R. Civ. P. 60(e), but has been held available under the All Writs Act where "no other remedy [is] available and sound reasons exist[] for failure to seek appropriate earlier relief." *United States v. Morgan*, 346 U.S. 502, 512 (1954).  Because relief is available under § 2255 even though he has been released because his petition was filed before his release, Petitioner's motion for a writ of coram nobis is denied.

Petitioner has also filed [Doc. # 28] a motion requesting that "the Court instruct [former] U.S. Attorney [Fein] to contact Attorney Cramer and compel him to send all the material he has pertaining to [the] criminal case" to Petitioner.  Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts requires that a party requesting discovery "provide reasons for the request" and permits a court to authorize discovery for "good cause."  Absent any showing of good cause or that the Government has authority over the Attorney Cramer with regard to the requested documents purportedly in his custody, Petitioner's motion is denied.

Finally, on May 28, 2014, Petitioner moved [Doc. # 38] for appointment of counsel, contending that "it has become very clear to the movant that he does not have the skills or legal expertise to adequately pursue these actions."  "[T]he Constitution guarantees . . . no right to counsel on habeas" petitions. *Wright v. West.*, 505 U.S. 277, 293 (1992).  However, under the Criminal Justice Act, a court has discretion to appoint counsel in a § 2255 proceeding if "the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B).  In determining whether "the interests of justice" require the appointment of counsel pursuant to § 3006A(a)(2), courts in this Circuit consider several

22

factors: "the petitioner's likelihood of success on the merits; the complexity of the legal issues raised by the petition; and the petitioner's ability to investigate and present the case." *Toron v. United States*, 281 F. Supp. 2d 591, 593 (E.D.N.Y. 2003) (citing *Hodge v. Police Officers,* 802 F.2d 58, 61–62 (2d Cir. 1986)).[14]  The appointment of counsel may be denied where the Court determines that a petition is without merit and, on that basis, Petitioner's motion for the appointment of counsel is denied.

### D.    Evidentiary Hearing

"It is within the district court's discretion to determine whether a hearing is warranted."  *Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003).  An evidentiary hearing is not required where the record, taken together with the moving papers and any exhibits or affidavits submitted, plainly demonstrates that the moving party is not entitled to relief and the court concludes that the petitioner's claims are truly without merit.  28 U.S.C. § 2255(b); *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990).  If material facts are in dispute, a hearing should be held.  *See, e.g.*, *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977) (noting the difference between the movant making a "bald allegation of mental incompetence" with no evidentiary facts alleged and the movant raising "detailed and controverted issues of fact").

Because it is plain to the Court after examination of the record and briefing that Mr. Holland's petition lacks any meritorious claim, and there are no material facts to be resolved, no evidentiary hearing is necessary.

---

[14] If a court holds an evidentiary hearing on a § 2255 petition, Rule 8(c) of the Rules Governing Section 2255 Proceedings requires the appointment of counsel.

**III.     Conclusion**

Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, for relief pursuant to 28 U.S.C. § 2255 [Doc. # 1] is DENIED.  Because Mr. Holland has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

Petitioner's motions [Doc. ## 16, 29, 28, 37] to compel are DENIED.  Petitioner's Motion [Doc. # 33] for Summary Judgment is DENIED and Motion [Doc. # 36] to strike the Government's response is DENIED as moot.  Petitioner's motion [Doc. # 24] for a writ of coram nobis is DENIED.  Petitioner's Motion [Doc. # 38] for Appointment of Counsel is DENIED.

The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of June, 2014.